IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RELUME CORPORATION TRUST, and DENNY FOY, SHAWN GRADY and MARIE HOCHSTEIN, TRUSTEES,<br><br>Plaintiffs,<br><br>v.<br><br>GE LIGHTING SOLUTIONS, LLC,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:  C.A. No. 12-871-LPS<br>:<br>:<br>:  UNSEALED ON<br>:  JANUARY 7, 2014<br>:<br>: |

George Pazuniak, O'KELLY ERNST & BIELLI, LLC, Wilmington, DE.

Timothy J. Haller, Brian E. Haan, Daniel R. Ferri, NIRO, HALLER & NIRO, Chicago, IL.

Robert P. Greenspoon, FLACHSBART & GREENSPOON, LLC, Chicago, IL.

 Attorneys for Plaintiffs.

Elizabeth W. Joyce, PINCKNEY, HARRIS & WEIDINGER, LLC, Wilmington, DE.

Robert J. McAughan, Jr., Bruce J. Cannon, SUTTON MCAUGHAN DEAVER PLLC, Houston, TX.

 Attorneys for Defendant GE Lighting Solutions, LLC.

## MEMORANDUM OPINION

December 30, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is Defendant GE Lighting Solutions, LLC's ("GE" or "Defendant") Motion for Summary Judgment on Plaintiffs' Sole Claim – Patent Infringement. (D.I. 54) For the reasons set forth below, the Court will grant the motion.

## I. BACKGROUND

On July 12, 2012, Plaintiffs Relume Corporation Trust and Denny Foy, Shawn Grady, and Marie Hochstein, as Trustees of the Relume Corporation Trust (collectively, "RCT" or "Plaintiffs") filed suit against GE alleging infringement of United States Reissued Patent No. RE 42,161 (the "'161 Reissue"). (D.I. 1) The '161 Reissue is a reissue of United States Patent No. 5,661,645 (the "'645 patent"), and relates generally to power supply and circuit compatibility for use with light-emitting diodes.

On May 9, 2013, GE moved for summary judgment. (D.I. 54) The parties completed briefing on the motion on June 3, 2013. (D.I. 55, 60, 63) The Court heard oral argument on the pending motion, as well as on claim construction, on August 23, 2013. (*See* Transcript of Aug. 23, 2013 hearing (hereinafter "Tr."))

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions,

1

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party carries its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to

2

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

The issue before the Court is whether GE obtained a license to the '161 Reissue through its 2000 acquisition of Ecolux, Inc. ("Ecolux"). Previously, in December 1999, RCT and Ecolux resolved a prior patent infringement lawsuit by entering into a Settlement Agreement (the "Agreement"). (D.I. 56 Ex. B) Three provisions of the Agreement are particularly pertinent here.

First, Section 2 of the Agreement provides a license:

> ***Relume***, and all of its officers, employees, ***assigns***, and agents, including but not limited to Mr. Peter Hochstein and Mr. Denny Foy, hereby grants to ***Ecolux*** a paid-up, royalty-free, non-exclusive license under the '645 and '909 patents . . . and any reissues . . . thereof . . . .

(Emphasis added)

Next, Section 5 provides a covenant not to assert certain patents:

> ***Relume***, and all of its officers, employees, ***assigns***, and agents, including but not limited to Mr. Peter Hochstein and Mr. Denny Foy, covenants, represents and warrants that it will not assert against ***Ecolux***, its directors, officers, employees, agents, consultants, parent companies, subsidiaries, ***successor-in-interest, assigns***, customers, dealers, distributors, and each of them, any claim for infringement of its . . . '645 and '909 patents [and other Relume patents, with respect to certain Ecolux LED signal products] . . . .

3

(Emphasis added)

    Finally, Section 14, states:

> This Agreement shall inure to the benefit of, and be binding upon, the parties and their respective affiliates, ***successors and assigns.***

(Emphasis added)

    There is no dispute that Ecolux transferred the Agreement to GE as part of GE's acquisition of Ecolux. (*Id.* Ex. C at § 1.1) For purposes of the motion, there is also no dispute that GE is a successor of Ecolux and that the Agreement applies to the '161 Reissue patent-in-suit. (*See* DI 60 at 2 n.1) The parties agree that the Agreement is governed by Michigan law, and that also applicable is the federal common law principle that patent licenses are not generally assignable without language expressly permitting assignment. (*See* D.I. 55 at 6; D.I. 60 at 2; *see also In re CFLC, Inc.*, 89 F.3d 673, 679 (9th Cir. 1996) ("It is well settled that a non-exclusive licensee of a patent has only a personal and not a property interest in the patent and that this personal right cannot be assigned unless the patent owner authorizes the assignment or the license itself permits assignment.") (internal quotation marks omitted)) The parties further agree that Section 14 of the Agreement permits the transfer of the Settlement Agreement generally. (Tr. at 10-11, 18)

    What is in dispute is the overall applicability of Section 14. GE contends that Section 14 applies to the entirety of the Agreement, permitting the assignment by Ecolux to GE of the Section 2 license to the '161 Reissue through execution of the acquisition. RCT contends, by contrast, that Section 14 is not so broad and only demonstrates the general transferability of the Agreement as a whole.

The Court concludes that Section 14's broad "successors and assigns" clause properly applies to the '161 Reissue license granted in Section 2. "[M]any other jurisdictions have concluded that similar ["successor and assigns"] provisions demonstrate that the parties contemplated and assented to future assignment." *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 861 (E.D. Va. 2011) (collecting cases). Here, Section 14 broadly, and without any express exclusion, provides that "*[t]his Agreement* shall inure to the benefit of . . . *successors and assigns*." (Emphasis added) Nothing in Section 14 *excludes* the rights granted in Section 2 from those rights that may be transferred to Ecolux's successors and assigns. Nor does any other provision in the Agreement provide for such exclusion. The Court agrees with GE that, "[w]hen considered within the context of the Agreement as a whole, it is clear that Section 14 was included to allow Ecolux's affiliates, successors, and assigns to benefit from all of the rights granted in the Agreement, including specifically, the license rights granted in Section 2." (D.I. 63 at 8) As the entirety of the Settlement Agreement is transferable, and nothing in that Agreement expressly excludes the license in Section 2 from the general transferability of the entire Agreement, the Court concludes that the license was transferable. *See Stenke v. Masland Dev. Co., Inc.*, 394 N.W.2d 418, 425 (Mich. Ct. App. 1986) ("Absent a contractual provision prohibiting assignment, an option . . . is assignable.").

Plaintiff's contrary interpretation of the Agreement emphasizes that Section 2, the license provision, does not contain "any language, of any form whatsoever, stating or suggesting that this particular license grant is 'assignable' or that it reaches 'successors.'" (D.I. 60 at 3) By contrast, RCT observes, Section 5, the covenant not to assert certain patents, expressly refers to Ecolux's successors and assigns. (*Id.*) To Plaintiff, then, Section 14 does not create any rights in Ecolux's

5

successors and assigns but, instead, "merely reflects that, to the extent successors and assigns have rights within the agreement (*e.g.*, Section 5), the Agreement inures to their benefit." (D.I. 60 at 4)

GE persuasively explains why RCT's approach to the Agreement is untenable. As GE observes, RCT's interpretation requires a paragraph-by-paragraph analysis of the Agreement in order to determine assignability; and, further, RCT requires that assignability is limited only to those portions of the Agreement that expressly reference not just Ecolux but *also* its successors and assigns. (*See generally* Tr. at 19) RCT's interpretation would lead to odd results, especially with respect to provisions that are not directly at issue here. For example, Section 7 provides that, should RCT's complaint be reinstated on remand from any appeal by RCT, such complaint "shall be dismissed with prejudice with respect to Ecolux." But Section 7 contains no reference to successors and assigns, meaning, in RCT's view, such complaint would not be dismissed with prejudice against an Ecolux successor or assign. It is not clear why RCT and Ecolux would have agreed that in circumstances in which Ecolux itself is immune from suit, Ecolux's successor or assign – which may be undertaking precisely the same infringing conduct as Ecolux had – would remain subject to suit. *See also* Agreement at ¶¶ 9-11 (additional provisions by which Ecolux, but *not* expressly its successors or assigns, covenants, represents, warrants, and/or promises, each of which is a provision which would not extend to Ecolux's successors or assigns under RCT's interpretation).

RCT faults GE's interpretation as "lead[ing] to some significant redundancies" (Tr. at 17), because GE would effectively read the word "Ecolux" everywhere in the Agreement to mean "Ecolux and its successors and its assigns." GE concedes that its reading of the Agreement has

6

this consequence. (*See* Tr. at 23-24) But neither party's interpretation avoids all redundancy, and the degree of redundancy resulting from GE's interpretation does not render RCT's contrary interpretation reasonable. RCT also references the contract interpretation doctrine of "*expressio unius*," which means that "inclusion by specific mention excludes what is not mentioned." *Hackel v. Macomb Cnty. Comm'n*, 826 N.W.2d 753, 762 (Mich. Ct. App. 2012) (internal quotation marks omitted). This doctrine does not apply to unambiguous contractual provisions like those at issue here. *See Grinnell Bros. v. Brown*, 171 N.W. 399, 400 (Mich. 1919).

RCT observes, correctly, that nowhere in the Agreement is it expressly stated that "the license to Ecolux is assignable." (Tr. at 16) Certainly, the Agreement could have been drafted more clearly on this point (and then this litigation likely could have been avoided). No explanation appears in the record as to why Ecolux's successors and assigns were not expressly called out in Section 2. Even so, the fact remains that the only reasonable interpretation of Section 14 is that the parties intended Ecolux's successors and assigns to enjoy all of the rights of Ecolux under the Agreement.

RCT points out that Section 2, the license provision, refers to Relume and *its* "assigns," making noteworthy the contrast on the other side of the transaction in that same Section 2, which references just "Ecolux." (*See* Tr. at 16) Again, this just illustrates that the Agreement is written with less than complete precision and clarity. It does not, however, render RCT's interpretation of the Agreement – as including a license that is not assignable – a reasonable interpretation.

The cases relied upon by RCT do not persuade the Court that summary judgment should be denied. *Hy King Assocs., Inc. v. Versatech Mfg. Indus., Inc.*, 826 F. Supp. 231, 239 (E.D. Mich. 1993), involved a "successors and assigns" provision that allowed assignment "only with

the consent of the principal," an unambiguous restriction on assignability not found in the Agreement here. *Stenograph Corp. v. Fulkerson*, 972 F.2d 726, 729 n.2 (7th Cir. 1992), considered whether a "successors and assigns" clause in a settlement agreement that was merely attached to – but not incorporated into – a patent license agreement (without a "successors and assigns" provision) made the license assignable; unlike here, where the very Agreement involved itself contains the "successors and assigns" provision at issue.

Hence, the Court concludes that the license granted by RCT to Ecolux did transfer to GE upon its acquisition of Ecolux. Accordingly, GE's motion for summary judgment will be granted.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant GE's Motion for Summary Judgment on Plaintiffs' Sole Claim – Patent Infringement (D.I. 54).